FRANKFURT KURNIT KLEIN & SELZ, P.C.
Craig B. Whitney, Esq.
488 Madison Avenue
New York, New York 10022
Tel.:  (212) 980-0120
Fax:  (212) 593-9175
*Attorneys for Casper Sleep, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

| | |
|---|---|
| CASPER SLEEP, INC., | : |
| | :    Case No. |
|      Plaintiff, | : |
| | :    **COMPLAINT** |
|    -against- | : |
| | :    **JURY DEMAND** |
| BENJAMIN TRAPSKIN, | : |
| | : |
|      Defendant. | : |
| | : |

-----------------------------------------------------------X

Plaintiff Casper Sleep, Inc. ("Plaintiff" or "Casper"), by its attorneys, Frankfurt Kurnit

Klein & Selz, PC, for its complaint (the "Complaint") against defendant Benjamin Trapskin

("Defendant" or "Trapskin"), alleges as follows:

## NATURE OF THE ACTION

1.  This is an action arising from Defendant Benjamin Trapskin's false advertising

and deceptive acts and practices under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a))

and Section 349 of the New York General Business Law.

2.  In early 2014, Casper launched as an innovative new sleep start-up, radically

disrupting the traditional mattress industry with one mattress sold directly to consumers online

with a risk free in-home trial—eliminating mattress stores and their inflated prices.  Casper's

unique approach sought to create a universally comfortable product with a sleek design delivered

straight to your door without the need for commission-driven salespeople working in retail

stores.  Instead, Casper offers its mattresses directly to consumers via its e-commerce website.

Casper immediately struck a chord with consumers, generating $1 million in sales within its first

month.

   3.  Casper's award-winning and patent-pending mattress design was the result of

significant research and development.  In creating "one perfect mattress" for consumers, Casper

tested more than 100 support foam samples, created more than 100 prototypes and conducted

more than 3,200 hours of rigorous product testing.  Collectively, Casper's best-in-class product

design team has won numerous awards and holds more than 50 patents.

   4.  Casper's success has spawned numerous "imitators" that duplicate Casper's

innovative approach without investing in any of the innovations that led to Casper.  TechCrunch,

a leading media publication, recently noted that since Casper launched in April 2014, "[t]he past

two years have also seen a boom in mattress startups . . . Casper does seem to have started a

trend."  As competition in online mattress sales has increased, so has demand for independent,

unbiased reviews of the many direct-to-consumer mattresses that are now available.  Because

consumers rely on these reviews in lieu of testing the mattresses themselves prior to purchase,

the honesty and integrity of the reviews and reviewers are essential to avoid consumer deception.

   5.  Through his website, "Sleep Sherpa," Trapskin holds himself out as an

independent and unbiased mattress reviewer.  In reality, however, Trapskin collects sales

commissions from Casper's competitors, whose products Trapskin reviews.  Trapskin's reviews

steer Sleep Sherpa readers toward products from whose makers Trapskin receives these benefits,

and away from products—such as Casper mattresses—from whose makers Trapskin receives

nothing.  In this way, Trapskin is part of a surreptitious economy of affiliate scam operators who

have become the online versions of the same commission-hungry mattress salesmen that online

mattress shoppers have sought to avoid.

6.    Consumers are entitled—and indeed, are required—to be informed about Trapskin's material connections to Casper's competitors so that they may weigh the value Trapskin's endorsements.  But Trapskin's reviews are devoid of any conspicuous disclosures notifying consumers of these practices.

7.    Casper—and the consumer—has suffered considerable injury as a result of Trapskin's undisclosed connections to Casper's competitors.  By falsely conveying that his reviews are independent and unbiased, Trapskin has damaged Casper's reputation, distorted the consumer marketplace, and deprived Casper of significant revenue due to lost sales.

## JURISDICTION AND VENUE

8.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because it arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*  This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum of $75,000 and is between citizens of different states. This Court has supplemental jurisdiction over Casper's state law claim pursuant to 28 U.S.C. § 1367(a) because it is so related to Casper's Lanham Act claim that it forms part of the same case or controversy.

9.    This Court has personal jurisdiction over Defendant pursuant to CPLR § 302(a)(3) because Defendant's tortious acts have caused injury to Casper within New York, and Defendant has otherwise committed acts giving rise to personal jurisdiction under CPLR § 302(a)(3)(i)-(ii).

10.    Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claim occurred in the Southern District of New York.

## PARTIES

11.     Plaintiff Casper is an e-commerce company that sells mattresses and other sleep products.  Casper is incorporated in Delaware, with its principal place of business at 45 Bond Street, New York, New York.

12.     Upon information and belief, defendant Benjamin Trapskin is the proprietor of http://www.sleepsherpa.com ("Sleep Sherpa"), a website that features Trapskin's reviews of mattresses, pillows, bedding, and other sleep products.  Upon information and belief, Trapskin resides in Minnesota.

## FACTUAL ALLEGATIONS

### *Casper's Early Success*

13.     Casper launched in 2014 with a single, state-of-the-art foam mattress product, sold directly to consumers through a simple online interface on http://www.casper.com.  Once purchased, a Casper mattress is compressed and shipped in a box the size of a mini-fridge and small enough to fit in the trunk of a car or be delivered by bicycle messenger.

14.     Casper also has a free, no-hassle return policy: a mattress purchaser has a 100-day trial period, at any point during which he or she may return the mattress for a full refund.  Once notified of the return, Casper arranges for a courier to pick up the mattress for donation or recycling.

15.     Casper's business model eliminates the deceptive sales tactics and inflated, commission-driven prices commonly found in mattress retail stores.  Removing this middleman has contributed to Casper's success: the company earned over $100 million in revenue during its first calendar year and has attracted nearly $70 million in investment.  *Fast Company* has named Casper one of its Most Innovative Companies in the World and *TIME* crowned the Casper mattress one of the Best Inventions of 2015.

16.     Casper's ascent has also inspired competitors.  Since Casper pioneered the digital mattress marketplace, dozens of online mattress retail start-ups have followed suit, selling mattresses on their own websites and on third-party platforms such as Amazon.

*__The Rise and Regulation of Affiliate Marketing__*

17.     In the wake of Casper's success and disruption of the traditional retail model, consumers can now purchase a wide variety of competing mattresses without ever stepping foot in a mattress store.  As a result, online reviews have become an increasingly prominent part of the online mattress marketplace: consumers seek out and rely on these reviews to compare competitors and make purchasing decisions.

18.     The important role of reviewers—on their review websites and on social media platforms—is pervasive across the online retail industry.  As the power of reviewers to influence purchase decisions has grown, retailers have partnered with reviewers to make reviewing products a profitable business in itself.

19.     One way that retailers help reviewers monetize their reviews is through "affiliate marketing," whereby the retailer rewards the reviewer or other "affiliate" for each purchase or website visit that the affiliate secures.

20.     The use of "affiliate links" and "coupon codes" is a common form of affiliate marketing.  An affiliate link is a unique URL leading to a retailer's website that contains an identifier associated with the affiliate.  When a customer arrives at the retailer's website by clicking on this URL link, any resulting purchases are tracked and the affiliate receives a commission on each purchase.

21.     Coupon codes have the same function as affiliate links, but work slightly differently.  Rather than a unique URL, an affiliate is provided with a unique code that consumers may enter at the time of an online purchase, often to receive a discounted price.

When a consumer enters the code, the sale is attributed to the affiliate, who receives a commission.

22.     Affiliate marketing and related practices create relationships between reviewers and retailers that consumers would not reasonably expect.  As a result, regulators of commerce, most notably the Federal Trade Commission (FTC), have made clear that these practices are unfair and deceptive if they are not effectively and conspicuously disclosed.

23.     In 2009, the FTC issued its Guides Concerning the Use of Endorsements and Testimonials in Advertising (the "Endorsement Guides"), using its authority under Section 5 of the Federal Trade Commission Act (the "FTC Act") to regulate unfair or deceptive acts or practices in or affecting commerce.  15 U.S.C. § 45; *see* 16 C.F.R. § 255.

24.     The Endorsement Guides specifically provide that "*[w]hen there exists a connection between the endorser and the seller of the advertised product that might materially affect the weight or credibility of the endorsement (i.e., the connection is not reasonably expected by the audience), such connection must be fully disclosed.*"  16 C.F.R. § 255.5 (emphasis added).

25.     In May 2015, the FTC released a set of answers to frequently asked questions regarding the Endorsement Guides (the "Endorsement Guide FAQs," *available at* https://www.ftc.gov/tips-advice/business-center/guidance/ftcs-endorsement-guides-what-people-are-asking) (attached as Ex. A).

26.     The Endorsement Guide FAQs contain an entire section devoted to affiliate marketing.  *See id.* at 18-19.  The section states that, for an affiliate disclosure to be "clear and conspicuous," the reader should be able to "see both the review containing that disclosure and the link at the same time."  *Id.*  It warns that "if the product review containing the disclosure and the link are separated, readers may lose the connection."  *Id.*  It also makes clear that "[p]utting disclosures in obscure places—for example, buried on an ABOUT US or GENERAL INFO page

6

. . .—*isn't good enough.*" *Id.*  The Endorsement Guide FAQs further state that "[a] single disclosure on your home page" is inadequate "because people visiting your site might read individual reviews or watch individual videos without seeing the disclosure on your home page." *Id.* at 11.

27.     The FTC's rules and guidance regarding affiliate marketing and related practices reflect the fundamental legal principle that commercial speech must be true and non-misleading. As applied to business relationships between retailers and reviewers, this means that reviewers must clearly and conspicuously disclose any material connections to retailers that they have. Trapskin has utterly failed to do so, and has caused Casper significant damage as a result.

### *Trapskin's Reviews are False and Misleading*

28.     Trapskin promotes Sleep Sherpa as a source for personally informed, independent, and unbiased mattress reviews.  Among other express affirmations of independence, Trapskin proclaims:

- "While many other mattress review sites keep popping up across the Internet — many out to make a quick profit by exploiting the online mattress boom — I aim to stand out as an objective, data-driven resource that offers true value to consumers in the market for a mattress." http://www.sleepsherpa.com/about/ (last visited Apr. 29, 2016).

-  "Since starting this site, I have been able to conduct dozens of mattress reviews from online mattress start-ups to big name retail brands.  Below are mattresses that I recommend and have personally tested." https://www.sleepsherpa.com/mattress-reviews/ (last visited Apr. 29, 2016).

- "Having such a wide exposure to different mattresses, I feel that I can give a unique perspective of what constitutes a good mattress and what will probably be a good fit for you too." https://www.sleepsherpa.com/mattress-reviews/.

29.     While Trapskin and Casper have no affiliate relationship, Trapskin *does* offer

affiliate links or coupon codes for many mattress products offered by Casper's competitors, often

in connection with a promised discount to the consumer.  Attached to this Complaint as Exhibit

B is, upon information and belief, a non-exhaustive list of mattress brands for which Trapskin is

an affiliate, including the relevant affiliate link or coupon code.

30.     Upon information and belief, Trapskin receives a commission whenever a

consumer uses one of the Sleep Sherpa coupon codes or affiliate links listed in Exhibit B to

purchase a mattress from one of Casper's competitors.

31.     In his reviews of the mattresses listed in Exhibit B, Trapskin misleadingly implies

that his statements are completely independent, unbiased, and informed solely by personal

experience, reinforcing his express promises of independence elsewhere on the website.  For

example, Trapskin states:

- "*This mattress has the Sleep Sherpa seal of approval* and I look forward to seeing more good things coming from Live and Sleep. It is one of my top mattresses for 2015." http://www.sleepsherpa.com/mattresses/liveandsleep/ (last visited Apr. 29, 2016) (emphasis added).

- "This is my first Nature's Sleep mattress review *and I honestly didn't expect this mattress to be so awesome*." http://www.sleepsherpa.com/mattresses/natures-sleep-emerald-gel-mattress-review/ (last visited Apr. 29, 2016) (emphasis added).

- "Sleeping on the Love Bed was heavenly…*This is now one of my top mattress recommendations*." http://www.sleepsherpa.com/mattresses/nest-bedding-review-the-love-bed/ (last visited Apr. 29, 2016) (emphasis added).

- "I have been using my new YogaBed for the past 2 weeks and *I want to try and convey to you how much this mattress is an improvement over what you will find in a conventional mattress store* in terms of price, quality and comfort." http://www.sleepsherpa.com/mattresses/the-yogabed-review/ (last visited Apr. 29, 2016) (emphasis added).

32.     As explained in further detail below, because Trapskin fails to sufficiently disclose his material connections to these mattress retailers, readers of Sleep Sherpa are unable to consider those connections in weighing the value of Trapskin's endorsements.

33.     By the same token, readers of Sleep Sherpa are unable to weigh the value of Trapskin's negative statements regarding Casper, with whom he has no affiliate relationship.

34.     For example, Trapskin has published a side-by-side comparison of the Casper and Leesa mattresses, entitled "Casper vs Leesa Mattress Review EXPOSED!" *See* http://www.sleepsherpa.com/mattresses/casper-vs-leesa-mattress-review/ (last visited Apr. 29, 2016).

35.     Upon information and belief, Trapskin has an affiliate relationship with Leesa, as evidenced by the coupon code offered at the end of the review: "Get an instant $75 off a Leesa mattress by entering promo code **SLEEPSHERPA75** at checkout." *Id.*  Trapskin fails to disclose on the review page that he receives a commission from purchases of the Leesa mattress, but not from purchases of the Casper mattress.  *See id.*

36.     Trapskin, unsurprisingly, declares that Leesa is the better mattress, going so far as to use an affiliate link to the Leesa website in his "Verdict":

> Get a Leesa mattress [*affiliate link*]. Casper is the mattress everyone has heard about but that doesn't mean it's a great mattress. Leesa contours better to your body and just plain feels better. Both my wife and I agree the Leesa is the clear winner. *Id.*

"[O]dds are," Trapskin continues, "that *you will probably like the Leesa way better than the Casper*." *Id.* (emphasis added).

37.     Similarly, Trapskin has published a side-by-side comparison of the Casper and competitor Nest Bedding "Love Bedding" mattresses, entitled "The Best Casper Competitor,

Found!"  *See* http://www.sleepsherpa.com/uncategorized/casper-vs-the-love-bed/ (last visited

Apr. 29, 2016).

38.     Upon information and belief, Trapskin has an affiliate relationship with Nest

Bedding, as evidenced by the coupon code offered at the end of the stand-alone Love Bed

review: "**Get $50 off** a Love Bed! CLICK HERE then enter coupon code **SHERPA** at

Checkout."  http://www.sleepsherpa.com/mattresses/nest-bedding-review-the-love-bed/.

39.     Again, Trapskin sides with the company with whom he has an affiliate

relationship, concluding, "If you are considering a Casper mattress . . . , I would strongly advise

taking a hard look at the Love Bed or Alexander Signature Select from Nest Bedding."

http://www.sleepsherpa.com/uncategorized/casper-vs-the-love-bed/.

40.     In this comparison, however, Trapskin goes further than simply failing to disclose

that he has an affiliate relationship with Nest Bedding and no affiliate relationship with Casper.

Rather, he affirmatively states that positive reviews of Casper elsewhere are likely biased, while

his own reviews are independent and personally informed:

> [T]he reason you are seeing Casper everywhere is because not only do they spend
> an absurd amount of money marketing, they also have an incentive for Casper
> consumers where they can get $50 for each Casper mattress referral through a
> unique coupon code they are given after purchase.  There's certainly nothing
> wrong with this and rewarding consumers for referrals has been around almost as
> long as sales itself but that said, *some of the reviews are probably biased* because
> of this incentive which perpetuates the notion that Casper is a better mattress.
>
> I have reviewed over a dozen mattresses on The Sleep Sherpa and have slept on
> many more than that. So far, The Love Bed has become the new gold standard
> when comparing mattress startups.

http://www.sleepsherpa.com/uncategorized/casper-vs-the-love-bed/ (emphasis added).

41.     Trapskin's direction of Sleep Sherpa readers away from Casper and towards

retailers with whom he has an affiliate relationship is not limited to these two comparisons.

Trapskin disparages Casper throughout his other reviews, none of which include disclosures of his affiliate relationships:

- "Since starting this site, I have had many former Casper customers looking for a softer alternative.  I have steered them to this mattress as a softer alternative that will perform much better." http://www.sleepsherpa.com/mattresses/4sleep-mattress-review-a-comfort-sandwich/ (last visited Apr. 29, 2016).

- "In a GhostBed vs Casper comparison, I would go with the GhostBed." http://www.sleepsherpa.com/mattresses/ghostbed-mattress-review/ (last visited Apr. 29, 2016).

- "My recommendation is to try the Live and Sleep first over Casper . . . given the quality and versatility of this mattress." http://www.sleepsherpa.com/mattresses/liveandsleep/.

- "I find it to be most similar to a Casper but a bit more substantial in terms of materials used." http://www.sleepsherpa.com/mattresses/s-bed-review-natural-casper-alternative-brentwood-home/ (last visited Apr. 29, 2016).

42.     Tellingly, Trapskin's Casper review was not always negative, a fact that further demonstrates his pay-to-play tactics.  Between April and July 2015, Casper and Trapskin had an affiliate relationship and Casper provided Trapskin with affiliate links.   Both before and during Trapskin's time as a Casper affiliate, he praised the Casper mattress, but shortly after Casper ended its affiliate relationship with Trapskin (and all other affiliate scam operators) in July 2015, Trapskin converted his praise to criticism and began to use the Casper review page as a platform to promote his remaining affiliates.

43.     Trapskin also uses social media to promote his deceptive reviews.  For example, on April 25, 2015, Trapskin, via his Twitter account @thesleepsherpa, tweeted a link to the Sleep Sherpa webpage titled "Casper vs Leesa Mattress Review EXPOSED!" (https://twitter.com/thesleepsherpa/status/592047619909636096) (last visited Apr. 29, 2016), wherein Trapskin concludes that Leesa "is the clear winner." *See*

http://www.sleepsherpa.com/mattresses/casper-vs-leesa-mattress-review/; *see also supra* ¶¶ 34-

36.  On June 25, 2015, Trapskin tweeted "Leesa Promo Code | BEST DEAL"

(https://twitter.com/thesleepsherpa/status/614164565169864704) (last visited Apr. 29, 2016),

which linked to a Sleep Sherpa webpage that contains an affiliate link to the Leesa website and a

coupon code.  *See* https://www.sleepsherpa.com/uncategorized/leesa-promo-code-best-deal/ (last

visited Apr. 29, 2016).  On that same page, Trapskin states, "I rate the Leesa Mattress very high.

It surpasses Casper on all counts."  Trapskin, however, fails to disclose in his social media posts

or on the Sleep Sherpa webpage that he has an affiliate relationship with Leesa.

44.     In these ways, through his explicit and implicit representations and failure to

disclose his affiliate relationships, Trapskin misleads consumers to believe that Sleep Sherpa

reviews are independent and unbiased, when in fact they are intended to sell mattresses made by

Trapskin's affiliates.

**_Trapskin's Disclosures are Inadequate_**

45.     In order to learn of Trapskin's affiliate relationships with Casper's competitors, a

reader of any of his affiliate reviews would have to hunt for one of the minimal disclosures

hidden on the Sleep Sherpa website.

46.     First, a reader could click on a link to Sleep Sherpa's "About" page (the "About

Page") found at the end of the site's header.  *See* http://www.sleepsherpa.com/about (attached as

Ex. C).  He or she would then have to scroll to the very bottom of the page, where the reader

would find the following "Product Review Disclaimer," which touts Trapskin's purported

independence even as it discloses his material connections to certain mattress retailers (without

even disclosing which ones):

> Some of the links in the post above are "affiliate links." This means if you click
> on the link and purchase the item, I will receive an affiliate commission.

> ***Regardless, I only recommend products or services I use personally and believe
> will add value to my readers***. I am disclosing this in accordance with the Federal
> Trade Commission's 16 CFR, Part 255: "Guides Concerning the Use of
> Endorsements and Testimonials in Advertising."
>
> I received one or more of the products or services mentioned on this site for free
> in the hope that I would mention it on my blog. ***Regardless, I only recommend
> products or services I use personally and believe will be good for my readers***. I
> am disclosing this in accordance with the Federal Trade Commission's 16 CFR,
> Part 255: "Guides Concerning the Use of Endorsements and Testimonials in
> Advertising."

Ex. C (emphases added).

47.     Second, the reader could click on a link to Sleep Sherpa's "Mattresses" page (the

"Mattress Review Page"), which collects Trapskin's reviews in a ranked list.  In a single sentence

couched in the middle of other introductory text, Trapskin states, "While I don't get paid to

review mattresses, I do receive a commission if a mattress is purchased through my site." *See*

https://www.sleepsherpa.com/mattress-reviews/ (attached as Ex. D).  Notably, Trapskin omits

that he only receives a commission if *certain* mattresses (the ones he conveniently touts as the

best) are purchased through his website.

48.     Finally, when the reader clicks on any individual mattress review—for both

affiliates and non-affiliate mattresses—at the bottom of the page following the review, Trapskin

misleadingly states, "*We aim to highlight products and services you might find interesting, and if

you buy them, we may get a small share of the revenue.*"  *See, e.g.*,

https://www.sleepsherpa.com/mattresses/leesa-mattress-review/ and

https://www.sleepsherpa.com/mattresses/casper-mattress-review/ (last visited Apr. 29, 2016)

(emphasis added).  Again, Trapskin does not identify which reviews are for mattresses retailers

that are compensating him, depriving the consumer of the knowledge that certain "higher-

ranked" mattresses are compensating Trapskin while other "lower-ranked" mattresses are not.

49.     None of these attempted "disclosures" cure the deception caused by Trapskin's reviews.

50.     Even if the substance of the disclosures were sufficient (they are not), the placement of the disclosures are far from clear and conspicuous.  As the FTC has recognized, "[d]isclosures should **not** be hidden . . . in blocks of text people are not likely to read" or in other "hard to find" places, and disclosures are not clear and conspicuous if "other elements in the ad or message obscure or distract from [them]."  Ex. A at 12 (emphasis in original on website).  Trapskin's "disclosures" are garbled and obscure, rather than clear and conspicuous.  Trapskin appears to have gone out of his way to obfuscate these disclosures.  They do not appear close to many of the coupon codes or affiliate links to which they relate; on the contrary, they are either cordoned off to entirely separate webpages, hidden among other text, or buried at the bottom of the webpage.

51.     As the FTC has recognized, such disclosures "[don't] really do it because people visiting your site might read individual reviews . . . without seeing the disclosure."  *Id* at 11.  Moreover, affiliates fail to satisfy their disclosure obligations by "placing [a disclosure] below [their] review or below the link to the online retailer so readers would have to keep scrolling after they finish reading."  *Id* at 18.

52.     The disclosures are also so general as to be uninformative or even misleading in their own right.  The disclosures fail to identify any specific affiliate relationships, stating only that "[w]e aim to highlight products and services you might find interesting, and if you buy them, we may get a small share of the revenue."  *See, e.g.,* https://www.sleepsherpa.com/mattresses/leesa-mattress-review/.  Similarly, the disclosures state that "[w]hile I don't get paid to review mattresses, I do receive a commission if a mattress is purchased through my site."  *See* Ex. D.  Not only do these "disclosures" leave readers without

any knowledge of the actual links and products to which this disclosure applies, they also falsely imply that Trapskin receives a commission for *all* mattresses he reviews and therefore that his reviews remain unbiased despite these connections.

53.     A simple Google search makes clear that a Sleep Sherpa reader would likely never encounter the disclosures on the About Page or the Mattress Review Page.  For example, a direct link to Sleep Sherpa's side-by-side comparison of Casper and Leesa mattresses—and *not* any of Sleep Sherpa's general pages—appears on the first page of Google's search results for "Casper vs Leesa." *See* Google Search results for "Casper vs Leesa," attached hereto as Ex. E.  And a direct link to Sleep Sherpa's side-by-side comparison of Casper and the Love Bed is the very first non-sponsored link in Google search results for "Casper vs Nest." *See* Google Search results for "Casper vs Nest," attached hereto as Ex. F.  There are *no* disclosures at all on these Sleep Sherpa webpages notifying consumers that Trapskin is compensated if you purchase the mattress that he recommends over Casper.

54.     In short, even if a Sleep Sherpa reader encounters Trapskin's limited disclosures of his affiliate relationship, the disclosure would fail to clearly inform the reader of Trapskin's material connections to Casper's competitors.

### *Casper's Damages*

55.     Trapskin's deceptive and misleading reviews have caused Casper significant lost sales and reputational damages.  The reviews have also, upon information and belief, resulted in sizable financial gains for Trapskin.

56.     As discussed, Casper's innovations led to early success and strong brand recognition.  Trapskin is exploiting the goodwill and notoriety of the Casper brand to increase traffic to his website and promote Casper's competitors, thereby increasing his commissions.

57. Trapskin's reviews feature prominently in Google search results for Casper mattress. A Google search for "Casper mattress," for example, yields a link to Sleep Sherpa's Casper review on the very first results page. *See* Ex. G. The link takes ultimately the user to a Sleep Sherpa webpage titled "Casper Mattress Review-IS IT WORTH IT?". *See* https://www.sleepsherpa.com/casper-mattress-review/casper-mattress-review/ (last visited April 29, 2016). Trapskin thereby directly interferes with potential Casper mattress sales, interposing his own false and misleading reviews.

58. Upon information and belief, potential Casper mattress purchasers, including potential purchasers located in New York, have been diverted to Trapskin's false and misleading Sleep Sherpa reviews through Casper-related internet searches. As a result of being deceived into believing in Trapskin's independence and non-bias, these consumers have purchased mattresses from Casper's competitors rather than Casper.

59. Casper estimates that Sleep Sherpa's conduct has caused it millions of dollars in lost sales to date, in addition to significant reputational harm. Additionally, upon information and belief, Trapskin has received significant income from commissions on these misdirected sales.

## FIRST CAUSE OF ACTION
### (Violation of Section 43(a) of the Lanham Act – 15 U.S.C. § 1125(a))

60. Casper incorporates Paragraphs 1 through 59 as if fully set forth herein.

61. As set forth above, Trapskin has made false and/or misleading statements on the Sleep Sherpa website, on Twitter, and in other social media, expressly and implicitly conveying that Trapskin's mattress reviews are independent and unbiased.

62. Trapskin's false and/or misleading statements have the capacity to deceive a substantial portion of Sleep Sherpa's intended audience of potential mattresses purchasers and,

upon information and belief, these statements have actually deceived potential mattress purchasers.

63.     Trapskin's false and/or misleading statements are material, in that they are likely to influence consumers' mattress purchasing decisions.

64.     By publishing his false and misleading statements on the Sleep Sherpa website, on Twitter, and elsewhere on the Internet, Trapskin has placed the statement in interstate commerce.

65.     Casper has suffered injury as a result of Trapskin's false and misleading statements, both by direct diversion of potential Casper sales and by a lessening of goodwill associated with Casper's products, in an amount to be determined at trial.

66.     Additionally, Trapskin has received revenue in the form of commissions from affiliate sales caused by his false and misleading statements, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Violation of Section 349 of the New York General Business Law)

67.     Casper incorporates Paragraphs 1 through 66 as if fully set forth herein.

68.     As set forth above, Trapskin has made false and/or misleading statements on the Sleep Sherpa website, on Twitter, and in other social media, expressly and implicitly conveying that Trapskin's mattress reviews are independent and unbiased.

69.     Trapskin has failed to sufficiently disclose his affiliate relationships with the makers of certain mattresses he reviews, information that Trapskin alone possesses but fails to provide.

70.     Trapskin's deceptive acts are directed at consumers because Trapskin incorporates them into webpages published on Sleep Sherpa, which features consumer-oriented reviews of

mattresses and other sleep products, and on Twitter, an immensely popular consumer-oriented social media platform.

71.     Trapskin's deceptive acts are likely to mislead a reasonable consumer acting reasonably under the circumstances.

72.     Trapskin's deceptive acts affect the public interest in New York because, upon information and belief, consumers located in New York have purchased mattresses from Casper's competitors on the basis of Trapskin's false and/or misleading statements and omissions.

73.     Casper has suffered injury as a result of Trapskin's false and misleading statements and omissions, both by direct diversion of potential Casper sales and by a lessening of goodwill associated with Casper's products, in an amount to be determined at trial.

74.     Additionally, Trapskin has received revenue in the form of commissions from affiliate sales caused by his false and misleading statements, in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

(a)     Finding Defendant has violated Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and Section 349 of the New York General Business Law;

(b)     Awarding damages in an amount to be determined at trial;

(c)     Awarding pre-judgment and post-judgment interest, to the fullest extent allowable at law or in equity, on all damages;

(d)     Awarding costs and disbursements of this action, including attorneys' fees; and

(e)     Granting such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure,

a trial by jury in this action.

Dated: New York, New York
      April 29, 2016

      FRANKFURT KURNIT KLEIN & SELZ, P.C.

      By:   /s/ Craig B. Whitney
          Craig B. Whitney

      488 Madison Avenue
      New York, New York 10022
      Tel.:  (212) 980-0120
      Fax:  (212) 593-9175
      cwhitney@fkks.com

      *Attorneys for Plaintiff Casper Sleep, Inc.*